The Honorable Barbara Rothstein

1

2

3

4

5

6

7

8        IN THE UNITED STATES DISTRICT COURT
9        FOR THE WESTERN DISTRICT OF WASHINGTON
         AT SEATTLE

10   MAYA GRACE MOREY, CHRISTOPHER
     NOONER, LISA HENDRICKSON, EMILY            No. 2:21-cv-00885-BJR
11   HORTON, KYLIE THORNLEY, VICTORIA
     FERRANTE, MICHELLE DARDAR,                 PLAINTIFFS' UNOPPOSED MOTION
12   HEATHER BARNES, MANUEL TORRES,             FOR APPROVAL OF SETTLEMENT,
     JORDANN WRIGHT, KIMBERLY UTZ,              CLASS NOTICE, SERVICE AWARDS,
13   ANYA BROWN, ANGEL COSME, JR., and          AND ATTORNEYS' FEES AND COSTS
     AMBER SHEID, each individually and on
14   behalf of all others similarly situated,

15                          Plaintiffs,

16        v.

17   AFTERMATH SERVICES LLC,

18                          Defendant.

19

20                      **I.      INTRODUCTION**

21        Plaintiffs Maya Grace Morey, Christopher Nooner, Lisa Hendrickson, Emily Horton, Kylie

22   Thornley, Victoria Ferrante, Michelle Dardar, Heather Barnes, Manuel Torres, Jordann Wright,

23   Kimberly Utz, Anya Brown, Angel Cosme, Jr., and Amber Sheid (collectively, "Plaintiffs") and

24   Defendant Aftermath Services LLC ("Defendant") have agreed, subject to Court approval, to

25   resolve this wage and hour lawsuit on a collective-wide basis for significant monetary relief. The

26   settlement, which followed a thorough investigation and discovery, satisfies the criteria for

27   approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it resolves

28

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106  FAX: (206) 441-9711

a bona-fide dispute, was reached after contested litigation, was the result of arm's-length settlement negotiations, assisted by a private mediator, between experienced counsel, and provides good value to the workers whom it will benefit. Plaintiffs respectfully request that the Court issue an order: (1) approving the $858,500.00 settlement set forth in the Settlement Agreement and Release ("Settlement Agreement") attached as Exhibit 1 to the Declaration of Timothy W. Emery in Support of Plaintiffs' Unopposed Motion for Approval of Settlement, Class Notice, Service Award, and Attorneys' Fees and Costs ("Emery Decl."); (2) certifying the Settlement Class pursuant to 29 U.S.C. § 216(b) for settlement purposes only; (3) approving the proposed Notice of Class Action Settlement ("Settlement Notice") and "Consent to Join Settlement, Release, and Claim Form" ("Consent Form") (attached as Exhibit A to the Settlement Agreement), and directing distribution of each in accord with the terms of the Parties' Settlement Agreement; (4) approving service awards to each of the named Plaintiffs; (5) approving Plaintiffs' request for $214,625.00 for attorneys' fees and $666.00 for litigation costs and expenses; (6) approving the Settlement Administrator's fees and costs in an amount not to exceed $35,000.00; (7) dismissing the Action and all Released Claims with prejudice and directing the clerk to enter judgment on the same, with a directive for Defendant to comply with the specific relevant terms of the settlement; (8) providing that each party shall bear his or its own attorneys' fees and costs except as otherwise provided herein; and (9) declaring that the Court shall have continuing jurisdiction over the Action (including for purposes of submitting the returned Consent Forms from Participating Settlement Class Members and for Plaintiffs to enter a satisfaction of judgment following Defendant's payment of the settlement).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations

Plaintiffs and the Class worked for Defendant as Technicians, Supervisors, Backup Supervisors, Assistant Supervisors, and Senior Field Supervisors from June 30, 2018 through the date of final disposition of this matter. Compl. ¶¶ 4, 38-39, 42 (Dkt. 1). Plaintiffs allege that Defendant violated the FLSA by improperly classifying them and members of the Class as exempt

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS - 2

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106  FAX: (206) 441-9711

under the FLSA and/or treating them as though they were exempt even though they were not. *Id.* at ¶¶ 14-17, 44. Plaintiffs further allege that Defendant willfully failed to account for or pay Plaintiffs and the Class for all hours worked and failed to properly pay overtime. *Id.* at ¶¶ 14-17, 42, 44, 51. Defendant denies that it committed any wrongdoing or violated any laws pertaining to classification of workers, payment of wages, or hours worked, and vigorously disputed the claims asserted in the litigation.

**B.      Overview of Investigation, Litigation, and Settlement Negotiations**

Before the initiation of this action, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Emery Decl. ¶ 6. Plaintiffs' Counsel focused their investigation and legal research on the underlying merits of the potential class and collective action members' claims, the damages to which they were entitled, and the propriety of collective action certification. *Id.* Plaintiffs' Counsel obtained and reviewed documents from Plaintiffs and other sources, including employee handbooks, pay records, timecards, and various communications. *Id.* Plaintiffs' Counsel interviewed Defendant's customers and researched Defendant's business practices, including its billing policies, scheduling, and hiring practices. Plaintiffs' Counsel interacted with dozens of witnesses, and ultimately represented and managed client relationships with fourteen named Plaintiffs.

On June 30, 2021, Plaintiffs filed the Collective Action Complaint for Damages, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq. See* Compl. (Dkt. 1).

Plaintiffs and Defendant exchanged discovery in multiple rounds. Emery Decl. ¶ 8. Plaintiffs' Counsel extensively reviewed the documents and performed numerous calculations on the data provided, which included Class-wide time and pay data spanning the entire potential limitations period. *Id.* Plaintiffs' Counsel spent approximately two months collecting data and performing calculations from Defendant's multiple document productions, including performing multiple calculations and modeling to determine the extent of the Class Members' potential damages. *Id.* The Parties' counsel also engaged in multiple telephone conversations and email exchanges regarding the documents and data provided up to the date of mediation. *Id.*

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 3

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106  FAX: (206) 441-9711

On October 5, 2021, the Parties attended a private, pre-mediation meeting with Lee A. Parks, a well-regarded mediator who is experienced in employment law class and collective actions. *Id.* at ¶ 9. During this pre-mediation meeting, the Parties discussed their respective views on the various claims and defenses at issue in the action, in an effort to make the mediation itself more productive. *Id.*

On October 11, 2021, the Parties attended a private mediation with Mr. Parks. *Id.* at ¶ 10. After more than eight hours of mediation, the Parties reached an agreement on the material terms of the settlement. *Id.* During the following seven weeks, the Parties engaged in further debate and negotiation, exchanged drafts, and finalized the terms of the settlement memorialized in a formal Settlement Agreement that was fully executed by the Parties and their counsel on November 30, 2021. *Id.* at ¶ 10 and Ex. 1. The terms of the Settlement Agreement were carefully crafted to balance the interests of the Settlement Class and Defendant, with due regard for the standards of fairness established under prior precedent. Emery Decl. ¶ 10.

### III.    SUMMARY OF THE SETTLEMENT TERMS

**A.    The Settlement Fund**

The Settlement Agreement establishes a gross settlement fund of $858,500.00 ("Fund") from which Class Members can claim settlement awards. Emery Decl. Ex. 1, at ¶ 15(a). The Fund covers any Court-approved service awards to Plaintiffs, any Court-approved attorneys' fees and costs, and the settlement claims administrator's ("Settlement Administrator") fees and costs, in addition to Participating Settlement Class Member awards. *Id.* at ¶¶ 9(j-k), 15.

**B.    Eligible Class Members**

"Eligible Settlement Class Members," referred to as "Participating Settlement Class Members" for purposes of clarity in this motion, are any and all current and former employees of Aftermath Services LLC who worked in Field Positions from the time period of June 30, 2018 to the date of final disposition of this action who timely opt-in to the Settlement Class. Emery Decl. Ex. 1, at ¶¶ 2, 9(c), 9(e). The Settlement Class has 776 members. Emery Decl. ¶ 15 and Ex. 1, at Ex. B.

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 4

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106  FAX: (206) 441-9711

**C.      Opt-In Procedures**

The Settlement Administrator will mail the Court-approved Settlement Notice and Consent Form to all Settlement Class Members within seven days of receiving the Class List. Emery Decl. Ex. 1, at ¶ 11(c). In order to provide the best notice practicable, the Settlement Administrator, prior to mailing the Court-approved Settlement Notice and Consent Form, will run the list of Settlement Class Members through the U.S. Postal Service's National Change of Address database ("NCOA"). Emery Decl. Ex. 1, at ¶ 11(d). The Settlement Notice and Consent Form will inform Settlement Class Members of the nature of the case, how to receive a settlement payment, the scope of their release, and provide additional information. *See* Emery Decl. Ex. 1, at Ex. A. Class Members will have sixty days from the date of the initial mailing to submit their Consent Form in order to become Participating Settlement Class Members and receive a payment. Emery Decl. Ex. 1, at ¶ 9(l).

Within five days of receiving any mailing returned as undeliverable, the Settlement Administrator will re-mail to the forwarding address. Emery Decl. Ex. 1, at ¶ 11(g). If there is no forwarding address, the Administrator will attempt to locate a correct address within five days, and must re-mail the documents within five days of finding the new address. *Id*.

**D.      Release**

All Participating Settlement Class Members will release any claims against the Releasees (as defined in the Settlement Notice) for minimum wage violations or unpaid wages that accrued during or arose out of or related to their employment with Defendant in a Field Position during the period from June 30, 2018 to the date of final disposition of this matter, including, but not limited to, all claims alleging a failure to pay minimum wages, a failure to pay overtime wages, a failure to pay overtime wages at the correct rate, a failure to pay for all hours worked (including any alleged unpaid, compensable on-call or travel time), all claims for alleged missed, non-compliant, or untimely meal periods and/or rest breaks, and all claims for paid sick leave or similar statutorily required paid leave benefits. Emery Decl. Ex. 1, at Ex. A. The named Plaintiffs will release any claims against the Releasees, including, but not limited to, all above-listed claims. Nothing herein

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 5

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106  FAX: (206) 441-9711

is intended to release California state law claims brought under *Hayden v. Aftermath Services, LLC*, Sacramento County Superior Court Case No. 34-2020-00287716, or *Stevens v. Aftermath Services, LLC*, Sacramento County Superior Court Case No. 34-2020-00286997.

**E.    Calculation of Settlement Awards**

Each Participating Settlement Class Member's Settlement Award will be calculated based on the number of workweeks worked by the Participating Settlement Class Member during the Class Period (exclusive of any time periods during which the individual had a primary, designated office location in the State of California) as compared with the total number of workweeks worked by all Settlement Class Members during the Class Period (exclusive of any time periods during which such individuals had a primary, designated office location in the State of California). Emery Decl. Ex. 1, at ¶ 17. For example, a Participating Settlement Class Member whose workweeks during the Class Period comprised 2% of the total workweeks worked by all Settlement Class Members during the Class Period would receive 2% of the Net Settlement Amount as a Settlement Award. *Id*. Fifty percent (50%) of each Settlement Award to Participating Settlement Class Members shall be treated as back wages, and the remaining 50% of each Settlement Award shall be treated as non-wage penalties and liquidated damages. Emery Decl. Ex. 1, at ¶ 18.

Any Settlement Checks not cashed within 90 days will become void and the funds from those uncashed checks shall revert to Defendant. Emery Decl. Ex. 1, at ¶ 19.

**F.    Service Awards**

The Settlement Agreement provides, subject to Court approval, that the named Plaintiffs will each receive a service award in recognition of their assistance rendered in obtaining the benefits of the settlement for the Class as well as the risks they took to do so. Emery Decl. Ex. 1, at ¶ 16(a). Subject to Court approval, the service awards to the named Plaintiffs will be in the following amounts, which reflect their respective contributions: Maya Grace Morey – $15,000.00, Christopher Nooner – $1,750.00, Lisa Hendrickson – $1,750.00, Emily Horton – $1,750.00, Kylie Thornley – $1,750.00, Victoria Ferrante – $1,750.00, Michelle Dardar – $5,000.00, Heather Barnes – $1,750.00, Manuel Torres – $1,750.00, Jordann Wright – $1,750.00, Kimberly Utz –

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 6

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106  FAX: (206) 441-9711

$1,750.00, Anya Brown – $1,750.00, Angel Cosme, Jr. – $1,750.00, and Amber Sheid – $1,750.00. Emery Decl. Ex. 1, at ¶ 11(b). The named Plaintiffs assisted counsel in the investigation of the claims, produced documents to support the claims, and reviewed and provided feedback on the settlement terms that ultimately helped Plaintiffs' Counsel reach this settlement. Emery Decl. ¶ 18.

**G.      Settlement Claims Administration**

The Parties have retained CAC Services Group, LLC ("Settlement Administrator"), a national class action administrator, to serve as the Settlement Administrator and handle all the tasks identified in Paragraphs 11, 12, 13, 15, 16, 18, 19, and 20 of the Settlement Agreement. Emery Decl. ¶ 20 and Ex. 1 at ¶¶ 11, 12, 13, 15, 16, 18, 19, and 20. The Settlement Administrator's fees, not to exceed $35,000.00, will be paid from the Fund. Emery Decl. Ex. 1, at ¶ 16(c).

**H.      Attorneys' Fees and Litigation Costs**

Under the Settlement Agreement, subject to Court approval, Plaintiffs' Counsel can apply to the Court for $214,625.00 in attorneys' fees and up to $8,500.00 for reasonable out-of-pocket costs and expenses incurred in litigating and resolving this matter. Emery Decl. Ex. 1, at ¶ 16(b). The costs currently equal $666.00 and include filing and service fees. Emery Decl. ¶ 22. Plaintiffs respectfully request that the Court approve reimbursement of those attorneys' fees of $214,625.00 and costs of $666.00.

**IV.      ARGUMENT**

**A.      A One-Step Approval Process is Appropriate in FLSA Collective Actions.**

FLSA settlements that do not include Fed. R. Civ. P. 23 classes can be approved in one step. *See, e.g., Wheeler v. Cobalt Mortgage, Inc.*, C14-1847-JCC (W.D. Wash. Oct. 16, 2015 (order approving joint motion approving FLSA settlement, certifying the case a collective action, and approving the notice and claim form); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)."); *Bozak v. Fedex Ground Package Sys.,*

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS - 7

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106   FAX: (206) 441-9711

1   *Inc.*, No. 3:11-Civ.-00738-RNC, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014) (approving an

2   unopposed motion for approval of FLSA settlement and comparing Rule 23 and FLSA class action

3   standards); *Powell v. Lakeside Behavioral Healthcare, Inc.*, No. 6:11-CV-719-ORL-28, 2011 WL

4   5855516, at *1 (M.D. Fla. Nov. 22, 2011) (adopting report and recommendation of magistrate to

5   approve FLSA settlement). Moreover, FLSA collective actions do not implicate the same due

6   process concerns as Rule 23 class actions. This is because collective actions under Section 216(b)

7   require workers to affirmatively opt-in to the litigation, unlike in a Rule 23 class action. *See*

8   *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771-72 (7th Cir. 2013); *see also Genesis*

9   *Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally

10   different from collective actions under the FLSA."). Under the FLSA, "parties may elect to opt in

11   but a failure to do so does not prevent them from bringing their own suits at a later date." *McKenna*

12   *v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on other grounds by*

13   *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989). Accordingly, "where the Court

14   evaluates an FLSA collective action settlement, the standard is less exacting than when evaluating

15   a Rule 23 class action settlement." *Grewe v. Cobalt Mortgage, Inc.*, C16-0577-JCC, 2016 WL

16   4014114, at *4 (W.D. Wash. July 27, 2016). Thus, a district court may approve the settlement in

17   one step, and should do so here for the reasons stated below.

18   **B.**     **The Settlement Is Fair and Reasonable and Should Be Approved.**

19        **1.**     **Standard for Approval**

20         An employee has two primary paths when seeking approval of a settlement of back wages

21   under the FLSA: the Secretary of Labor or the district court. *Lynn's Food Stores, Inc. v. United*

22   *States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).[1] If the employee chooses the latter option, the

23   district court has a duty to determine whether the proposed settlement is a fair and reasonable

24   resolution of a bona fide dispute over FLSA provisions. *See, e.g., Grewe v. Cobalt Mortgage, Inc.*,

25   C16-0577-JCC, 2016 WL 4014114, at *4 (W.D. Wash. July 27, 2016) (citing *Lynn's* with

---

[1] Although the Ninth Circuit has not explicitly adopted *Lynn's*, this Court discussed *Lynn's* prevalence and its "leading case" status in *Wilson v. Maxim Healthcare Servs., Inc.*, C14-789RSL, 2017 WL 2988289, at *1 (W.D. Wash. June 20, 2017).

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 8

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106   FAX: (206) 441-9711

approval); *Lee v. The Timberland Co.*, C 07-2367 JF, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008) (same); *Fontes v. Drywood Plus, Inc.*, CV-13-1901-PHX-LOA, 2013 WL 6228652, at *5 (D. Ariz. Dec. 2, 2013) (same). If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Lynn's Food Stores*, 679 F.2d at 1354. *See also Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.") (quoting 4 A. Conte & H. Newberg, *Newberg on Class Actions*, § 11:50 at 155 (4th ed. 2002)).

The settlement in this case easily meets the standard for approval. The Parties have a bona fide dispute over the existence and extent of Defendant's liability under the FLSA. This bona fide dispute includes matters going to the heart of Plaintiffs' claims, and includes matters relating to Defendant's position: (1) that the Plaintiffs and Settlement Class Members it classified and/or treated as exempt were properly classified and treated as exempt under either or both of the executive and/or administrative exemptions; (2) that, regardless, it has been properly paying its salaried employees overtime since September 2019; (3) that it met the standards for and properly made use of the halftime method for calculating overtime under the fluctuating workweek rule set forth in 29 CFR § 778.114; (4) that even absent the more particularized fluctuating workweek rules, its method for calculating overtime comports with the more general, default rules set forth in 29 CFR § 778.109 and 29 CFR § 778.113 (noting that "earnings may be determined on a piece-rate, salary, commission, or other basis," and that "[t]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."); (5) that it properly paid its hourly employees different hourly rates for the different types of work they performed (e.g., administrative work and drive time was paid at one rate, while estimate and job work time was paid at another rate); (6) that the weighted average methodology it employed in calculating overtime for its hourly employees is the "default" rule under the FLSA for employees who work at two or more hourly rates and is lawful pursuant

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS - 9

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106  FAX: (206) 441-9711

to 29 CFR § 778.115 ("Where an employee in a single workweek works at two or more different types of work for which different nonovertime rates of pay (of not less than the applicable minimum wage) have been established, his regular rate for that week is the weighted average of such rates."); (7) that prior to July 2019, it was properly paying its hourly employees overtime using the hourly rate applicable to the work being performed during the overtime hours (the "rate in effect" method) pursuant to an agreement or understanding it had reached with its hourly employees; (8) that regardless of the propriety of its pre-July 2019 overtime practices relating to hourly employees, it has already provided those employees with backpay for overtime for the period from July 2017-July 2019 under a DOL supervised resolution and therefore any claims relating thereto have already been resolved; and (9) that it has maintained a lawful on-call policy during the entire limitations period in accord with established standards for non-compensability. Emery Decl. ¶ 12.

The reasonable compromise reflected in the Parties' Settlement Agreement was reached as a result of extensive pre-suit investigation, discovery, and substantial arm's-length negotiations after commencement of the lawsuit. Emery Decl. ¶¶ 6, 8-10. Moreover, the settlement does not present any signs of collusion. It was vigorously negotiated with the help of a well-respected class action employment law mediator. *Id*. at ¶ 10; *see also Satchell v. Fed. Express Corp*., C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *Lapan v. Dick's Sporting Goods, Inc*., No. 13 Civ. 11390, 2015 WL 8664204, at *1 (D. Mass. Dec. 11, 2015) (finding assistance of mediator "reinforces that the Settlement Agreement is non-collusive"). All Participating Settlement Class Members' awards will be calculated according to the same allocation formula. Emery Decl. Ex. 1, at ¶ 17. Therefore, the settlement should be approved as fair and reasonable.

**C.    All Factors Considered Support Approval of the Settlement.**

In making its determination as to whether a settlement should be approved, a court may consider "the risk, expense, complexity, and likely duration of litigation; the amount offered in

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND ATTORNEYS' FEES AND COSTS - 10

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106  FAX: (206) 441-9711

settlement; the extent of discovery completed and the stage of the proceedings; and the reaction of putative members to the proposed settlement." *Grewe v. Cobalt Mortgage, Inc.*, C16-0577-JCC, 2016 WL 4014114, at *1 (W.D. Wash. July 27, 2016) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1988), which discusses Fed. R. Civ. P. 23(e) class action settlement factors). As discussed below, these factors all weigh in favor of approving the Parties' settlement.

First, there are risks that Plaintiffs would not succeed on a motion for FLSA notice, or in maintaining a collective through trial. Emery Decl. ¶ 13. Defendant would likely argue that a whole host of factors implicated in the case preclude certification, or would warrant decertification of a collective. *Id*. These factors include: (1) the various job titles, roles, and duties at issue in the action; (2) the various work locations at issue in the action; (3) the various written and oral agreements (or lack thereof) between Defendant and each of the Plaintiffs and Class Members; (4) the individual choices made by each of the Plaintiffs and Class Members with respect to their actions within their respective offices and out in the field; (5) the various actions and/or inactions of the specific supervisors and managers in charge of overseeing each of the Plaintiffs and Class Members; (6) the maturity and/or lack thereof of the specific satellite office from which each of the Plaintiffs and Class Members were dispatched; (7) the various staffing practices and work volumes of Defendant's operations at the various offices and locations to which the Plaintiffs and Class Members were assigned. *Id*. Additionally, a trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. *Id*. Given the time, expense, and uncertainty of certification, dispositive motions, trial, and appeal, the Plaintiffs agree that a compromise is appropriate. *Id*.

Second, the amount offered in settlement, $858,500.00, is substantial, especially in light of the considerable risk that Plaintiffs face. Plaintiffs' calculations show that the average net settlement award will be approximately $720.84 (after fees, service awards, and all costs are deducted). *Id*. at ¶ 16. By Plaintiffs' estimate, this amount is a substantial portion of, and potentially more than, the total amount of the Class's lost wages. *Id*.

Third, continued litigation would decrease the settlement amount available to the putative

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 11

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106   FAX: (206) 441-9711

collective members. *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Indeed, there is no doubt that the time and expense of continuing the litigation would be substantial, and that such transactional costs could significantly reduce whatever judgment, if any, Plaintiff could recover through litigation."). Here, if litigation were to continue, the Parties would expend significant resources, including additional discovery and motions practice. However, "[a]voiding such unnecessary and unwarranted expenditure of resources and time would benefit all parties and the Court." *Id*. As stated above, there also are risks that Plaintiffs could fail to certify the action, Defendant could move for decertification, and appeals could extend this case for years. Emery Decl. ¶ 13. Given that Defendant has three other class action employment law-related lawsuits pending against it in California and Washington state courts, it is possible that Plaintiffs may never be able to collect their wages. *Id*. Through the settlement at hand, the Class Members receive prompt, certain relief.

Finally, though Plaintiffs have not yet gauged the reaction of the putative Class Members to the settlement because the case has not yet been conditionally certified, given the substantial number of individuals they have spoken with to date, Plaintiffs are confident that the Class Members will be interested in recovering such large sums of past wages owed to them. *Id*. at ¶ 17. This is not a case of collecting a few dollars; Participating Settlement Class Members stand to gain a substantial portion of, and potentially more than, the amount of their alleged lost wages, estimated at $720.84 per person as discussed above. Id. at ¶ 16. Because this case is a collective action, rather than a class action like in *Hanlon*, Class Members do not risk being part of a settlement they are not interested in because they must affirmatively opt-in to the settlement to recover their portion of the settlement sum.

Settlement avoids these risks and provides a prompt and substantial recovery for the Class. As such, the settlement should be approved.

///

///

///

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 12

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106  FAX: (206) 441-9711

**D.      The Settlement Notice and Claim Form Is Adequate.**

The Court should approve the proposed Settlement Notice and Claim Form. The proposed Settlement Notice informs Class Members of the terms of the settlement, including the allocation formula, how Class Members may participate (or not participate), the release, and the request for attorneys' fees and costs. *See* Emery Decl. Ex. 1, at Ex. A. The Consent Form is a straightforward one-page form. *See id*.

**E.      The Service Awards to Plaintiffs Should Be Approved as Fair and Reasonable.**

Named Plaintiffs in collective actions "play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny." *Rodgers v. Abbster Enters. LLC*, 3:16-CV-00106-GMG, 2017 WL 4453555, at *1 (N.D.W. Va. Oct. 4, 2017). As such, courts commonly approve service awards to named plaintiffs. *See Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 WL 5364575, at *11 (E.D. Cal. Oct. 31, 2012). Class awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009). This is especially true in employment litigation. *See, e.g., Taylor v. Fedex Freight, Inc.*, 113CV01137DADBAM, 2016 WL 1588405, at *6 (E.D. Cal. Apr. 20, 2016) ("Incentive awards are particularly appropriate in wage-and-hour actions where a plaintiff undertakes a significant 'reputational risk' by bringing suit against their former employers.") (citing *Rodriguez.*, 563 F.3d at 958–59); *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (internal quotation marks omitted))).

The Plaintiffs request approval of service awards in the total amount of $41,000.00. Emery Decl. Ex. 1, at ¶¶ 11(b) and 16(a). The requested service awards to the named Plaintiffs range from

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 13

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106   FAX: (206) 441-9711

$1,750.00 to $15,000.00 depending on their involvement in the case. *Id*. at ¶¶ 18-19. Courts in the Ninth Circuit have approved similar and greater awards in the FLSA context. *See, e.g., Wheeler v. Cobalt Mortgage, Inc.*, C14-1847-JCC (W.D. Wash. Oct. 16, 2015) (order approving service award of $10,000 to the named plaintiff); *Glass v. UBS Fin. Servs.*, Inc., C-06-4068 MMC, 2007 WL 221862, at *17 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 Fed. Appx. 452 (9th Cir. 2009) (order approving service award for $25,000 to the named plaintiff). *See also* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. Rev. 1303, 1333 (2006) (finding the "mean within case average award" to be approximately $12,000, that number being "the average of incentive awards within a case, then averaged over all cases in the [employment] category.")

The service awards requested are reasonable given the significant contributions Plaintiffs made to advance the prosecution and resolution of the lawsuit. Here, the Plaintiffs spent considerable time preparing documents for, engaging in telephone calls and exchanging emails with, and undergoing interviews by Plaintiffs' Counsel. Emery Decl. ¶ 18. The Plaintiffs gathered and provided documents to Plaintiffs' Counsel; contacted potential Class Members and witnesses; made themselves available throughout the mediation; and provided input on settlement terms before, during, and after mediation. *Id.*

**F.  Attorneys' Fees and Costs Should Be Approved as Fair and Reasonable.**

When reviewing common fund cases like this one, district courts in the Ninth Circuit have discretion to choose either the percentage-of-the-fund method or the lodestar method for calculating attorneys' fees. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1295–96 (9th Cir. 1994). Here, Plaintiffs' Counsel requests $214,625.00 for attorneys' fees plus $666.00 for litigation costs and expenses. Emery Decl. ¶ 22 and Ex. 1, at ¶ 16(b). The fee award requested is consistent with or lower than awards granted in this district. *See Randolph v. Centene Mgmt. Co., LLC*, 3:14-cv-05730-BHS, (W.D. Wash. Nov. 28, 2016) (order granting $1,350,000, one-third of the fund, in attorneys' fees); *Eilerman v. McLane Co., Inc.*, 16-cv-05303-BHS (W.D. Wash. May 17, 2017) (order granting final approval and one-third of the fund in attorneys' fees).

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 14

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106  FAX: (206) 441-9711

For the reasons stated below, Plaintiffs' requested fee award is reasonable no matter which calculation method the Court chooses.

### 1.     As a Percentage of the Common Fund, the Requested Fee is Reasonable.

Plaintiffs' requested fee award represents 25% of the gross settlement fund. Emery Decl. ¶ 22. This percentage is the Ninth Circuit's long-established "benchmark" of 25% of the common fund. *See Hanlon*, 150 F.3d at 1029 ("This circuit has established 25% of the common fund as a benchmark award for attorney fees.") (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.") (citing *Six Mexican Workers*, 904 F.2d at 1311). Notably, in "most common fund cases, the award exceeds that benchmark." *Knight v. Red Door Salons, Inc.*, 08-01520 SC, 2009 WL 248367, *6 (N.D. Cal. Feb. 2, 2009). Moreover, "fee awards in class actions average around one-third of the recovery." *Romero v. Producers Dairy Foods, Inc.*, 1:05cv0484 DLB, 2007 WL 3492841, *4 (E.D. Cal. Nov. 14, 2007) (quoting 4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007)); *see also Cicero v. DirecTV, Inc.*, No. EDCV 07-1182, 2010 WL 2991486 (C.D. Cal. July 27, 2010) ("Other case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in cases in which the common fund is relatively small") (citing *Newberg* § 14.6).

Courts in the Ninth Circuit evaluate whether a percentage-based fee award is reasonable by reviewing a number of factors including: (1) the results achieved for the class; (2) the risk to class counsel; (3) class counsel's performance; (4) the contingent nature of the fee; and (5) the awards made in similar cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). As explained below, all of these factors support Plaintiffs' requested fee award.

///

///

///

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 15

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106  FAX: (206) 441-9711

1

### a. The Results and Benefits Conferred Upon the Class

2
"The overall result and benefit to the class from the litigation is the most critical factor in

3
granting a fee award." *Richardson v. THD At-Home Servs., Inc.*, 1:14-CV-0273-BAM, 2016 WL

4
1366952, at *8 (E.D. Cal. Apr. 6, 2016). Here, the settlement will provide the Class with a

5
substantial cash payment. The Settlement Agreement provides that Defendant will pay a maximum

6
settlement amount of $858,500.00 to settle all claims against it. Emery Decl. Ex. 1, at ¶¶ 9(j) and

7
15. This is well within the range of reasonable recoveries for the Class.

8
The settlement represents significant value given the attendant risks of litigation. *Id*. at ¶

9
13. By Plaintiffs' estimation, the settlement amount (after deducting the class awards,

10
administration costs, and fee awards) represents approximately $720.84 per Class Member for the

11
Class's lost wages. *Id*. at ¶ 16. This figure also includes penalties that a factfinder could ultimately

12
determine are inapplicable. *Id*. at ¶ 16 and Ex. 1 at ¶ 18.

13

### b. The Risk of Continued Litigation

14
"The risk of costly litigation and trial is an important factor in determining the fee award."

15
*Rosales v. El Rancho Farms*, 1:09-CV-00707-AWI, 2015 WL 4460635, at *20 (E.D. Cal. July 21,

16
2015) (citing *Chemical Bank v. City of Seattle*, 19 F.3d 1297, 1299–1301 (9th Cir. 1994)).

17
Recovery of FLSA claims can be uncertain given the statute of limitations and the limitations on

18
liquidated damages. The FLSA's statute of limitations is two years, and is extended to three if the

19
violations are willful. A violation is considered willful "if the employer either knew or showed

20
reckless disregard" for the risk that its conduct violated the FLSA. *McLaughlin v. Richland Shoe

21
Co*., 486 U.S. 128, 133 (1988). Here, Plaintiffs may not have been able to prove that Defendant's

22
violations were willful, which would have reduced their reward significantly. Likewise, "[a]n

23
employer who violates the overtime law is liable not only for the unpaid overtime compensation

24
but also 'in an additional equal amount as liquidated damages.'" *Chao v. A–One Med. Servs., Inc.*,

25
346 F.3d 908, 920 (9th Cir. 2003) (quoting 29 U.S.C. § 216(b)). However, a court could deny the

26
liquidated damage award if it determined that the employer acted in good faith, with objectively

27
reasonable grounds for its belief that it had not violated the FLSA. *Id*.

28

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 16

1    This uncertainty weighs in favor of approving the fee award. Where, like here, "recovery

2    is uncertain, an award of one-third of the common fund as attorneys' fees has been found to be

3    appropriate." *Franco v. Ruiz Food Prods., Inc*., 1:10-CV-02354-SKO, 2012 WL 5941801, at *16

4    (E.D. Cal. Nov. 27, 2012) (citing *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 463 (9th Cir.

5    2000) and *In re Heritage Bond Litig*., No. 02–ML–1475 DT, 2005 WL 1594403, at *19, n. 14

6    (C.D. Cal. June 10, 2005). As discussed above, the payments to Participating Settlement Class

7    Members factor in statutory penalties and liquidated damages, and thus are even more beneficial

8    to the Class than a potential outcome at trial or otherwise. Emery Decl. Ex. 1, at ¶ 18. Based on

9    the significant results achieved for the Class in light of the significant risks, this factor supports

10   approval of the fee award.

11              **c.  Class Counsel's Performance**

12        "FLSA claims involve complex mixed questions of fact and law . . . [which] must be

13   resolved in light of volumes of legislative history and over four decades of legal interpretation and

14   administrative rulings." *Barrentine v. Arkansas–Best Freight Sys., Inc*., 450 U.S. 728, 743 (1981).

15   Thus, to be successful, class counsel in a "complex national class action requires unique legal skills

16   and abilities." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (internal quotations omitted).

17   Plaintiffs' Counsel is experienced in wage and hour litigation and class actions. Emery Decl. ¶ 21.

18   Plaintiffs' Counsel has successfully managed, litigated, and settled multiple class actions across

19   several states. *Id*. at ¶ 21. Plaintiffs' Counsel exhibited the requisite skill and ability to successfully

20   advocate for and negotiate on behalf of a class of individuals to reach meaningful results for the

21   Class Members. Thus, this factor supports approval of the fee award.

22              **d.  Contingency Fee**

23        The Ninth Circuit has long recognized a public policy of awarding attorneys who take cases

24   on a contingency basis. *See In re Wash. Pub. Power Supply Sys. Sec. Litig*, 19 F. 3d at 1299 ("It is

25   an established practice in the private legal market to reward attorneys for taking the risk of non-

26   payment by paying them a premium over their normal hourly rates for winning contingency

27   cases."). In determining the reasonableness of a requested fee award, "[c]ourts consistently

28

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 17

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106  FAX: (206) 441-9711

recognize that the risk of non-payment or reimbursement of expenses" is a factor. *In re Heritage Bond Litig.*, 2005 WL 1594403 at \*21. Plaintiffs' Counsel took this case on a contingent basis, meaning that there was a strong risk that they would not be paid. Emery Decl. ¶ 5. Should the Court reject the settlement, Plaintiffs' Counsel also faces significant legal hurdles in establishing certification and proving liability. *Id.* at ¶ 13. Plaintiffs' Counsel could have lost, and still could lose, everything they invested in this case. *Id.* at ¶ 5. Accordingly, this factor favors approval of Plaintiffs' fee award.

### e.  Awards Made in Comparable Cases

The Ninth Circuit, while rejecting a model that replicates the market rate, finds it "more appropriate to examine lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size." *Vizcaino*, 290 F.3d at 1050 (9th Cir. 2002). The requested fee here – 25% – is the "benchmark," and clearly meets this criterion, and has been affirmed within this district at an even higher percentage. *See Randolph*, 3:14-cv-05730-BHS, (W.D. Wash. Nov. 28, 2016) (order granting one-third of the fund as attorneys' fees); *Eilerman*, 16-cv-05303-BHS (W.D. Wash. May 17, 2017) (order granting one-third of the fund as attorneys' fees). *See also Romero v. Producers Dairy Foods, Inc*., 1:05cv0484 DLB, 2007 WL 3492841, \*4 (E.D. Cal. Nov. 14, 2007) (quoting 4 Newberg and Conte, *Newberg on Class Actions* § 14.6 (4th ed. 2007) ("fee awards in class actions average around one-third of the recovery"). Plaintiffs' request for attorneys' fees is consistent with similar case awards and therefore weighs in favor of approval by this Court.

### 2.  A Lodestar Cross-Check Also Supports Plaintiffs' Fee Request.

Plaintiffs' Counsel's fee request should be approved because its reasonability is confirmed by a lodestar cross-check. *See Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award."). When used to cross-check the percentage, the lodestar method does not require an extensive or exhaustive review of counsel's hours. *See Franco*, 2012 WL 5941801, at \*18 (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005)

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 18

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106  FAX: (206) 441-9711

("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting."). Here, Plaintiffs' Counsel's lodestar as of the conclusion of this matter will well exceed the percentage award requested. Emery Decl. ¶ 23. The sheer volume of discovery, complexity of a hyper-complicated pay system, requirement to build Excel models to track alleged damages across the Class, the necessity of interacting with dozens of witnesses and Plaintiffs, the lengthy mediation process, and the drafting of documents, including this Motion, required a team of attorneys and support staff to complete over six months. *Id*. The results of this effort provided Plaintiffs and the Class with a substantial recovery. *Id*. at ¶¶ 11, 14-16. The request for 25% of the fund is thus fair and reasonable no matter how it is calculated, and the Court should approve the request.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: (1) approving the $858,500.00 settlement set forth in the Settlement Agreement attached to the Declaration of Timothy Emery as Exhibit 1; (2) certifying the Settlement Class pursuant to 29 U.S.C. § 216(b) for settlement purposes only; (3) approving the proposed Notice of Class Action Settlement and Consent to Join Settlement, Release, and Claim Form, and directing distribution of each in accord with the terms of the Parties' Settlement Agreement; (4) approving service awards to each of the named Plaintiffs; (5) approving Plaintiffs' request for $214,625.00 in attorneys' fees and $666.00 in litigation costs and expenses; (6) approving the Settlement Administrator's fees and costs in an amount not to exceed $35,000.00; (7) dismissing the Action and all Released Claims with prejudice and directing the clerk to enter judgment on the same, with a directive for Defendant to comply with the specific relevant terms of the settlement; (8) providing that each party shall bear his or its own attorneys' fees and costs except as otherwise provided herein; and (9) declaring that the Court shall have continuing jurisdiction over the Action (including for purposes of submitting the returned Settlement Consent Forms from Participating Settlement Class Members).

///

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 19

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106  FAX: (206) 441-9711

1     Dated: January 6, 2022.

By: s/ Timothy W. Emery
By: s/ Patrick B. Reddy
Timothy W. Emery, WSBA No. 34078
Patrick B. Reddy, WSBA No. 34092
**EMERY REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Tel: (206) 442-9106
Fax: (206) 441-9711
Email: emeryt@emeryreddy.com
Email: reddyp@emeryreddy.com
*Attorneys for Plaintiffs Maya Grace
Morey, Christopher Nooner, Lisa
Hendrickson, Emily Horton, Kylie
Thornley, Victoria Ferrante, Michelle
Dardar, Heather Barnes, Manuel Torres,
Jordann Wright, Kimberly Utz, Anya
Brown, Angel Cosme, Jr., and Amber
Sheid*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF
SETTLEMENT, CLASS NOTICE, SERVICE AWARDS, AND
ATTORNEYS' FEES AND COSTS - 20

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106  FAX: (206) 441-9711

1
2
3

**CERTIFICATE OF SERVICE**

4

    I hereby certify that on January 6, 2022, I caused to be electronically filed the foregoing

5

document with the Clerk of the Court using the CM/ECF system which will send notification of
such filling to the following CM/ECF participants:

6

    Peter H. Nohle
    E-mail: nohlep@jacksonlewis.com

7
8
9

                                        */s/ Jennifer Chong*
                                        Jennifer Chong, Legal Assistant

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EMERY | REDDY, PLLC
600 STEWART STREET, SUITE 1100
SEATTLE, WA 98101
PHONE: (206) 442-9106  FAX: (206) 441-9711